All right. Next case up is the United States v. Coronado. Mr. Lee. Good morning, Your Honors. I'm Josh Lee from the Colorado Federal Public Defender's Office, and I represent Jesus Coronado. The question presented in this appeal is whether the police acted within the scope of consent when they climbed onto a roof to retrieve the gun that was subsequently used to prosecute Mr. Coronado. The answer is no. The lessee only. Can we put this in context? We're hearing a clear error review, correct? I maintain that it's de novo review. However, I think I went under either standard. I think it's. I'm sorry. Go ahead. Well, I'm just curious. I think it's de novo. Hasn't the Supreme Court made it pretty clear that even when there's video, that we defer to the district court's factual findings? Absolutely. And there's no dispute about what any of the facts are. So everybody agrees what was said. Everybody agrees the tone and how it was said. The question is what a reasonable observer would have taken from the exchange. And the Supreme Court has made clear that that sort of ultimate question of reasonableness is a question of law review de novo. So when the district court found that it was within the scope of consent, that was an error of law. And if you commit an error of law on the way to making a clear error type of ruling, it's clearly erroneous. Regardless, I think the court should have a definite and firm conviction that the district court made a mistake. And that's so for multiple reasons. The lessee only gave the police permission to go in the home. In other words, to search its interior. The police did not have permission to climb onto the roof. And in addition to that, the lessee only consented to a search for Mr. Coronado. But the police knew that Mr. Coronado wasn't on the roof. In fact, by the time the police had climbed onto the roof, they had already found and arrested Mr. Coronado elsewhere. So let's start with the fact that the- Let me stop you on the second point with regard to permission to search only for Mr. Coronado. In the district court, there was never an argument made that because they had already arrested Mr. Coronado, whatever QCAP was given had dissipated. Would you agree we got some argument made for the first time on appeal? No, and I'm glad you brought this up because I don't think it was as clear in my reply brief as it should have been. I think that that argument is preserved for appeal for two independent reasons. First, Mr. Coronado's objection was sufficient under street. So what Mr. Coronado said is this search was outside the scope of consent. That put the scope of consent on the table, and all my appellate arguments are doing is building on that objection and detailing why it was outside the scope of her consent, and that's permitted under street. But setting that aside, the argument is also preserved under suite. All I am doing- the suite case I've cited, because all I'm doing is challenging the district court's decision on its own terms. What the district court said is this was within the scope of Ms. Valtierra's consent because the roof was a place where Mr. Coronado might have been hiding. It's now fair game for me to say, no, he couldn't have been hiding there. He was already arrested. And that is- the suite case says an appellant can challenge a ruling on a ground addressed by the district court, even if he didn't raise it below. So the district court having ruled the reason this is within the scope of consent is because he could have been up there. I'm now permitted to say he couldn't have been up there based on the district court's own factual findings. The district court found as a fact first Mr. Coronado was arrested, and then after he's arrested and everybody knows that, then they go on the roof. So I think that is preserved. I think I'm glad I had an opportunity to address it here. That said, you don't even have to reach that issue because the district court also clearly erred in its belief that Ms. Valtierra said anything to manifest consent to a search of anywhere other than the interior of her home. So let's remember, the standard under Florida versus Gimeno is how would a reasonable observer have understood the exchange between the officers and the consenting person? The officers are only talking about being concerned that Mr. Coronado is inside the house. They've already looked everywhere around the outside of the house. They're like, we think he's inside the house. Don't make us send the SWAT team in there. She says, all right, all right, you have my permission to go in there. Under that circumstance, any reasonable observer would say they're talking about the interior of the home. No reasonable observer is going to think, if I give Judge Phillips permission to go into my home to look for something, he then gets to climb on top of the roof. That's not reasonable. But they came back to her and said, there's a firearm on the roof. Yes, but she never gave any further consent. So what the order is, she says, you have my permission to go in there. He's not in there. Then they're like, you know, we found a gun, or we see that there's a gun on the roof. She didn't. Could they have gone in the basement? Could they have gone in a basement? That would be a closer case. I think that if. Or the attic. Oh, yes, I think so. So let me make clear. If the basement is accessible from the interior of the house, and if the attic is accessible from the interior of the house, I think it's clear, yes, they would have the authority to search that. She gave them permission to go in and search. Instead of going in and searching, they put a ladder on the exterior of the home and climbed onto the roof. I think, you know, if they had gone in and searched, like they did in Pena, you know, the government cites Pena in support of its case. I don't think Pena helps the government at all. Because in Pena, the defendant says, yes, you can look in the motel room. And they went in and they searched. That's all they did. And similarly, in my case, when she says you can go in, she was giving them permission to go in and search. And that's just not what they did. What if they had seen someone on the roof? If they had seen someone on the roof, they could have secured further consent from Ms. Valtierra, or they could have gotten a warrant. But the question is not what the police want to do, but what a reasonable person would have understood from the exchange. Now, if they had said, if the police had said, look, we see this guy on your roof, and she says go ahead and search, sure, they can do it. In that situation, they've secured consent to go onto the roof. So they need to secure consent or get a warrant. And when they say, we think he's inside, we think he's inside, and she says, go ahead and go in there, the only consent that they've secured is consent to go into the home. And they saw the firearm with the naked eye, right? Yes. And so presumably, other people could see the firearm with their naked eye. Not really, because they had to climb onto a high wall, like a seven foot high wall, and then sort of shimmy up a telephone pole and shine a light, and then they were barely able to see it. So yeah, I think that the roof is not really visible from the street. I think that doesn't really go to the main issue, which is the fact that they just didn't get consent to climb onto the roof. So I think the locational scope issue is meritorious. The sort of object of the search, that he couldn't reasonably have been found on the roof, that's preserved. And the government doesn't really even fight on the merits of they can continue to search for him after they've already found him. So really, all the government has left is this argument that Mr. Coronado does not have standing. But that's just not something that this court can or should address for the first time on appeal. That was something that was raised below. The district court deliberately avoided deciding that issue, because it was a tough, fact-intensive issue. And that's something that the district court needs to address for the first time on remand. Let me ask you about Kenya. I mean, you've argued that when we're looking at the district court's decision about the scope of permission, that we reviewed it de novo. But in Kenya, we held that we reviewed for clear error the district court's factual findings that the defendant's consent extended to the motel room's  That suggests to me that we are on clear error review regarding the district court's decision about the scope of consent. Two responses to that. First, I definitely think we win under any standard of review, because it's clearly erroneous to think that allowing me to go in your house gives me permission to climb onto your roof. That said, the fact that the overall standard of review is clear error does not preclude the notion that the district court can make a legal mistake in finding a fact. So what happened here is what a reasonable observer would have taken from the exchange is a legal question. And even if the overarching consent issue is a finding of fact, it's de novo whether the judge makes a legal mistake on the course of resolving a factual issue. That said, I think that the court doesn't even need to decide that, because it's clearly mistaken to think permission to go in means permission to climb onto the roof. And it's clearly mistaken to think that consent to search for a person continues after the police have already found that person, unless the court has further. What makes standing sticky? Why is that difficult when we have testimony about not being a social guest and so forth? I think that the standing issue is sticky, because there are disputes of fact. So Mr. Coronado claims that he was an overnight guest. And in fact, the police admitted that they had intel that he had been staying at that house. Staying or visiting? Staying. So the officer Munoz, who was the supervising officer, testified, you know, we were buzzing that house because our intel indicates that he was staying there. What was the defendant's testimony on that point? The defendant did not testify one way or the other on that point. The government claims that he did. That's wrong. What he said is Mr. Coronado's testimony, which the district court found was perjurious, was that when the police arrived that night, I wasn't there. I was at someone else's house. But what the police said is, we've been going by that house because we had intel he was staying there. Mr. Coronado alleged that I'd been an overnight guest there. The government claims otherwise. The district court hasn't held a suppression hearing and hasn't resolved this issue, and it needs to do so on remand. Thank you. May I please score?  Counsel, good morning. My name is Frederick Mendenhall. I represent the United States. Now the first question presented in this case, your honors, is whether, well, a woman gave consent for law enforcement officers to search in her home for a wanted man. And the first question is whether that consent included permission to search her roof for that man. Below, the district court concluded yes, and that conclusion is not clear error. And we are absolutely on clear error standard review here, just to respond to some of the points raised just now. Mr. Coronado represented today that no one disputes the facts, but he is disputing a fact, and that fact is the scope of consent. And this court has made absolutely clear that the scope of consent is a factual determination, and that's United States versus Pena. Judge McHugh has already brought that point up. Now today, he also argues, well, there was a legal mistake on the way to that factual determination. But he hasn't identified what that legal mistake is. I mean, here the district court did exactly what it was supposed to do. Look at the totality of the circumstances and make a factual determination whether the search of the roof was within the scope of consent. And it absolutely was. I think the argument is that the question of whether a reasonable person would understand go in to mean that you could go on the roof is a legal determination as a predicate to the factual determination of the scope. I think that's the argument. Your Honor, and yes, Your Honor. I hear what the court's saying, but I think he has it absolutely reversed. You make the scope of consent factual determination, and then you make a legal call as to whether a reasonable person would understand all of that. I think this court's case in United States v. Pena makes clear that we're here on clear error review. But regardless, we would win under de novo review as well. Let me ask you this. If the issue of whether they could search the roof after they'd already arrested Mr. Coronado is before us properly, don't you lose? Well, it's not before you, Your Honor, but I'll answer your question. Well, answer my question first. Yes, Your Honor, of course. Can you go in somebody's house to search for a human being when you've got permission to search for that human being when you've already apprehended the human being, and therefore, no, they're not in the house? Your Honor, I would respond, in some cases, yes, you can. And I think it would be very factually specific. I recognize I didn't brief this, but I think there are a couple things that the court Well, you didn't brief it because you hung your whole argument on it's not preserved. So if we were to disagree with you and actually be persuaded by the arguments that were made this morning about preservation, you haven't made any merits argument to it, so we'd have to rule against you, wouldn't we? Yes. We didn't waive it. I agree with that, or I apologize, Your Honor. We did not brief it. But this court can affirm on reasons that I have not raised. I recognize that I'm raising it here on our argument the first time. I know y'all are not really inclined to listen to these arguments raised here. But to answer the court's question about whether we would lose on that, I think the answer is, in some cases, no. What about this case? In this case, yes, Your Honor. First, the question turns on the objective understanding of the parties, not subjective knowledge of them. So if one party learns of a subjective fact that, actually, this person isn't in the house, I don't think that would necessarily change the scope of consent. The second response I have, Your Honor, is that when a reasonable person understands that I'm giving you permission to search for this person who I told you is not in my house, and I'm saying you can go in and assure yourself that I am telling you the truth, he's not in my house, you find him somewhere else and arrest him? You think that you still have permission to go in and search your house? I think, Your Honor, there is some give in this Fourth Amendment analysis. I think a homeowner would know, OK, I'm giving them consent to search for something. As soon as they find it, they may need time to get out of the house. They may need to, maybe not everybody knows about it. There is sort of a buffer period, I would submit to the court, that a reasonable person would understand. And in this case, the gun was seized within 20 minutes. And I point the court to the analysis in United States versus Jackson, which is in my brief. It's a Fourth Circuit case. I didn't cite it for this proposition, but it talks about a law enforcement officer having consent to search a basement for someone. In the first pass-through, they see something suspicious, but they don't check it out immediately. They don't find the person, come back later and look at what they thought was suspicious, and the court said that was fine. I think that's sort of a similar situation here. But I understand I did not raise that, Your Honor. You should absolutely find that this issue was raised. Well, is it waived? I mean, was it preserved? It was not preserved. We have an argument made, first of all, that it goes to the scope of consent so that the issue was raised, and this is just a variation on the argument. And we have another argument under Sweet that because the district court ruled about what a reasonable person would understand and held that you could search the roof, that they're able to respond to that with the fact that they already found it. It was waived, Your Honor, and I want to be clear. There were two sentences in the reply brief below about this issue. And it was not this search is outside of the scope of consent. That's not what defense said below. Defense said, and I'm paraphrasing, the consent was for the house, not for the roof. From those two sentences, the district court would have had no idea. No one would have had any idea that they were raising this argument that, actually, it's not scope of consent. It's whether consent ended. They're completely different concepts, Your Honor. One, the way he raises it is a spatial concern. It's the house, not the roof, not a temporal argument about, actually, it was over. For that reason, this court should find that it was waived. Now, taking the totality of the circumstances of the consent, which this court looks at in the light most favorable to the United States, the context makes it clear that when Ms. Voltierra said, law enforcement officers, you can go in the house, she was giving a broader permission to search for a person, wherever that person may be. But it was conditioned, or at least it was in mind, the words, chemical munitions. We're going to have to use chemical munitions and blow your house up, or potentially damage property. Yes, Your Honor. Those are things that the law enforcement officers did say to her. But it was all for the purpose of finding a person and taking the context in its totality, that they were going to, taking a step back, I think any reasonable person would understand, I'm giving permission for you to search for this man. And if they went inside, and the man was there and fled to the roof, the reasonable person wouldn't think, well, my consent ended at the home. They can't go on the roof to go after this man. But had they spotted him on the roof, they wouldn't have used chemical munitions and damaged her property, right? That's a difference. I believe that's true, Your Honor. I think they probably would not have used munitions if they had spotted him on the roof. But I'm not sure about that. I think further adding context to this is that law enforcement officers did alert Ms. Volterra that there was a gun on the roof. And in that moment, 30 seconds or so after they'd gotten consent from her that she volunteered for, volunteered, she didn't object. She didn't say, well, you can't go on the roof or you can't get the gun or anything like that. In that position, a reasonable person would absolutely think, okay, this gun, that's not mine. Law enforcement officers have just alerted me to it. By not objecting, it's quite reasonable that they go up there and get the gun. Why not just ask? They certainly could have, Your Honor, but they did not do that here. And so who bears the brunt of that? I think the question here is whether the district court clearly erred in finding it within the scope of consent. I don't think that that fact changes that analysis here, especially in the court's cases here, like, for example, United States v. Pena, the fact that the person did not contemporaneously object to expanding the scope of the search is directly on point here, Your Honor. So it's not something that the United States bears. Well, Pena is a little different. I mean, it's the bathroom in a hotel room. I mean, you say you can come in and search my hotel room. I think it's pretty easy to see that that would include the bathroom. But not only did it include the bathroom, but the ceilings above the bathroom tile. And as the court analyzed in that case, it was about the object of the search. Drugs could be hidden in the ceiling. A person could be hidden on the roof. Now, I recognize that Mr. Coronado raises, well, they cleared the roof, so he wouldn't be there. But the key distinction there, Your Honors, is that a person is mobile. They can run around. Even if they weren't on the roof at one point doesn't mean that they couldn't get into the roof later on. Was there a way to access the roof from inside the casita? Not from inside the casita, Your Honor. He'd have to go outside. There was a... And he'd have to go outside and climb a ladder. There was a platform. Is that right? Not a ladder, Your Honor. There was a platform on the backside of the house from which somebody could climb to get on the roof. Was the firearm visible to just a passerby? The firearm would be visible from a neighbor. I recognize that the neighbor would have to step up on their property and look around, but it would be visible to a neighbor. What does that mean? Climb a pole or have good posture? Something in between, Your Honor. Not a pole. I know that one of the law enforcement officers did, but if I recall correctly from one of the videos, there's like a platform or a standing from which a neighbor could step up on and look over the fence and could see it from that vantage point. But no community caretaker argument? No, we didn't raise a community caretaking argument,  Did the drone spot the firearm? Yes, the drone did, but only after a human being spotted it first. Is that causal? It wouldn't have spotted it except the human being saw it first? I'm not sure, Your Honor. I mean, the record doesn't reveal that. Here, we do have a human being spotting it, and later on, they had a drone to confirm that. What if the officers had said, oh, we see a firearm, we caught the guy, we see a firearm up on your roof, and she says, well, I had a firearm stolen, and of course, they're looking for him for a firearm violation, so it's not a big stretch that he might have tossed the firearm on the roof. And they said, we want to go up on the roof. Is that okay with you? And she said, no. Then what? If she said no at that point, I think we'd have to secure a search warrant. Now, if the court finds against, finds that the district court did clearly err, we did raise some standing arguments, Your Honor. And they are, I just want to take one. I notice that I'm almost out of time. The cleanest legal issue from which the court can determine standing is that even assuming he was a social guest or a house guest or an overnight guest, Mr. Coronado did not have a reasonable expectation of privacy in the roof of Ms. Valtierra's home. It's a clean legal issue, Your Honor. There are several cases from out of circuit that I cited for the proposition that even house guests don't have a reasonable expectation of privacy in every part of the home. That is an issue that this court can affirm on, and the record supports it, and I would urge the court to do so if it reaches it. Unless the court has any other questions for me, then we stand on everything else in our brief, and we ask that the court affirm. Seeing no questions, thank you, Counsel. I do have a question. Please. So, why wasn't the standing issue better developed in the district court? Different places in the briefs, it said that the facts were fully developed, but the court declined to hold a hearing. I didn't see a request for a hearing on this issue or a motion that teed it up for the district judge. That's a great question, Your Honor. Certainly, defense counsel below was very well aware of the standing issues and the briefing that was presented. I would direct the court to volume four on the record of appeal, page 663. Defense counsel talks about, I've done some research on the standing issue. He's clear that he says, I'm not conceding this, but I think I'm gonna have problems on standing. He says that to the district court judge. Later, at a separate hearing, before he files his reply brief, he tells the court, and this is volume four on record of appeal, 14 and 15, pages 14 and 15. He asks the court for a continuance on his reply brief. He says that he's talked to some witnesses. It's the homeowner and the sister, and he says, I have my reply brief written. I recognize I'm out of time. I have my reply brief written. I want to attach an affidavit about what they're going to say, but they need counsel before I do that. As soon as they have counsel, I'm gonna attach this affidavit and submit it to you, district judge. District judge says, fine. Curiously, six weeks later when he files the reply brief, there's no affidavits filed. I think this is a clear signal, Your Honor, that defense counsel looked into the standing issue and he did not think that there were gonna be any facts from which he could present to meet his burden. Well, does the court has any further questions for me? Thank you. Mr. Lee, so I'm not burning your time. Come on up to the podium, but while you're walking, let me ask you to pick up right where counsel left off, which is no reasonable expectation in the roof. Yes, a couple of things about that. First, I think opposing counsel has sort of confused the record here. The bottom line is defense counsel claimed Mr. Coronado did have standing. He claimed that it was because he was an overnight guest and he requested an evidentiary hearing to prove those allegations. Can you tell us where that is in the record? Yes, give me one second. It is in Mr. Coronado's reply. Let's see. Okay, it is in Mr. Coronado's, give me one moment. Yes, here we go. It is volume one of the record, page 220, is the reply in support of the motion to suppress and that's where he says, Mr. Coronado was an overnight guest, I request an evidentiary hearing. So it was very clear that he was claiming standing for that reason. Now, the government says, well, hey. Can I just ask you one more question? Is that the same motion to suppress which is requesting the Franks hearing or is it a different one? It's a reply in support of that motion. So the reply in support of the motion, there's a general request for an evidentiary hearing. But didn't those only go to the sufficiency of the search warrant? That whole motion to suppress? No, so the motion to suppress is about the search warrant. It says the search warrant's invalid and I have standing. So the motion to suppress says both things. We have standing, search warrant's invalid. The government comes back and says, forget about the search warrant, there's consent. The defense comes back and says, no, she didn't consent to this search and I have standing because I was an overnight guest. I would like an evidentiary hearing. That reply starts at page 220 of volume one of the record. Last thing I want to say, if I may, is you don't even have to decide reasonable expectation of privacy because going on the roof is a physical intrusion onto the home and an overnight guest has standing to challenge a physical intrusion onto the home. That's United States versus Bain from the First Circuit cited in my brief. Any cases with the roof? No, but in use check, this court said that going onto the roof would be a physical intrusion onto the home. So if you put use check together with Bain, you get the idea that an overnight guest has standing to challenge a physical intrusion onto the home. All right, thank you, counsel, for your arguments. The case is submitted. Counsel are excused. Thank you.